IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC ADETAYO GRILLO, M.D., | No. C 05-2559 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket Nos. 4, 11] |
| STATE OF CALIFORNIA, et al., | |
| Defendants. | |

This matter comes before the Court on Defendants California Department of Corrections and State of California's Motion to Dismiss [Docket No. 4] and Defendant California Medical Board's Motion to Dismiss [Docket No. 11]. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS the Motion to Dismiss of Defendants California Department of Corrections and the State of California [Docket No. 4] and GRANTS the Motion to Dismiss of Defendant California Medical Board [Docket No. 11].

**BACKGROUND**

**A.    Factual Background.**[1]

Plaintiff Isaac Adetayo Grillo ("Plaintiff" or "Dr. Grillo") is a medical doctor originally from Nigeria, Africa. Compl. at ¶ 4. Dr. Grillo received his M.D. from Kansas University in 1960 and subsequently completed his residency at the Jewish Hospital in Kansas City. *Id.* From 1965 through 1966, Dr. Grillo trained in thoracic surgery. *Id.* at ¶ 5. He later moved to California and became one of the first thoracic surgeons at Highland Hospital, Oakland. *Id.* Dr. Grillo took and passed, in his first attempt, the General Surgery Board Exams in 1966 and the Thoracic Surgery Board Exams in 1967. *Id.* From 1967 to 1968, Dr. Grillo worked as a physician at the San Leandro Tuberculosis hospital while teaching thoracic surgery to residents at Highland Hospital. *Id.*

---

[1]The following facts are taken from Plaintiff's Complaint.

In 1968, Dr. Grillo moved back to Nigeria. *Id.* at ¶ 6. For approximately twenty years, from 1968 to 1988, he was, successively, a lecturer, professor, and Head of the Department of Surgery at the only medical school with the University of Ibadan, in Ibadan, Nigeria. *Id.* During this time, he was the only thoracic surgeon in Nigeria. *Id.* He was also on the team that performed the first open heart surgery in Africa. *Id.* In 1988, Dr. Grillo moved from Nigeria to Saudi Arabia and was appointed professor of surgery at King Saud Hospital in Abha, Saudi Arabia. *Id.*

In 1999, at the age of seventy, Dr. Grillo left Saudi Arabia and returned to the United States. *Id.* at ¶ 7. Dr. Grillo applied for, and was appointed, the first and only black doctor for the California Department of Corrections ("CDC") at the Salinas Valley State Prison in Monterey County, California. *Id.* Dr. Grillo commenced employment with the CDC in January 2000. *Id.*

While employed by the CDC, Dr. Grillo was regularly chastised by the hospital's chief for prescribing too many tests. *Id.* at ¶ 18. Additionally, prison officials frequently expressed their disapproval when Dr. Grillo would order an x-ray to determine whether a patient had an internal fracture. *Id.* Prison officials complained to Dr. Grillo that the tests and referrals he prescribed were costing the CDC "money they could not afford." *Id.* Prison officials also told Dr. Grillo that prisoners did not deserve sophisticated medical care. *Id.* Dr. Grillo believes that the CDC "targeted" him because of his race and because of his practice of referring patients for diagnostic tests, MRIs, x-rays, and laboratory tests. *Id.* at ¶ 19.

On June 27, 2000, prisoner Kenneth Holcomb ("Holcomb") was injured when he was physically attacked by another prisoner. *Id.* at ¶ 20. Holcomb was initially examined by prison physician, Dr. Clark. *Id.* Dr. Clark did not x-ray Holcomb or perform any tests. *Id.* Although Holcomb had been given a neck collar, Dr. Clark removed the collar and sent Holcomb back to his cell in a wheelchair. *Id.* The next day, on June 28, 2000, Dr. Grillo learned of the incident involving Holcomb. *Id.* at ¶ 21. Since the Medical Technical Assistant Abel Harrison ("Harrison") refused to bring Holcomb to Dr. Grillo, Dr. Grillo visited Holcomb in his cell. *Id.* at ¶ 22. Dr. Grillo brought a neck collar and hard board with him. *Id.* Although it was not the usual custom of the prison to videotape examinations, the custody officer videotaped Dr. Grillo's examination of Holcomb. *Id.*

During Dr. Grillo's examination of Holcomb, Holcomb complained that he could not feel anything below his neck, suggesting that he was suffering from a spinal injury. *Id.* at ¶ 23.  Dr. Grillo also noted that Holcomb had priapism, a prolonged erection of the penis, which was indicative of a spinal injury. *Id.*  However, Holcomb's blood pressure and pulse were normal. *Id.*  His oxygen saturation was also at an acceptable level. *Id.*  Further, although Holcomb was not able to breath using his lungs, his abdominal breathing was normal. *Id.*  Because Holcomb stated that he could not feel anything below his neck, but also stated that he felt cold, Dr. Grillo suspected that Holcomb had Manchausen syndrome[2] and was therefore faking his injuries. *Id.*

After his initial examination of Holcomb, Dr. Grillo called Dr. Daniel Thor ("Dr. Thor"), the chief physician, for a second opinion. *Id.* at ¶ 24.  Dr. Thor arrived approximately forty-five minutes later. *Id.*  During this time, Dr. Grillo did not have access to Dr. Clark's notes because Dr. Clark's notes were in the possession of Dr. Thor. *Id.*  While waiting for Dr. Thor, Dr. Grillo decided that he would test whether Holcomb was malingering. *Id.* at ¶ 25.  Dr. Grillo therefore told Holcomb that he would inject something into his arm that would make his arm move. *Id.* at ¶ 25.  In reality, Dr. Grillo only injected 2 cc of saline solution, a placebo, into Holcomb's arm. *Id.*  Holcomb's arm moved, further indicating to Dr. Grillo that Holcomb was malingering. *Id.*  When Dr. Thor arrived, Dr. Grillo received Dr. Clark's notes. *Id.* at ¶ 26.  Dr. Thor reviewed Dr. Grillo's diagnosis and signed "Agreed" on the charts. *Id.*

Shortly thereafter, Dr. Grillo ordered an x-ray of Holcomb's cervical spine. *Id.* at ¶ 27.  The x-ray revealed that the patient had an anterior dislocation of vertebrae C5/C6, which indicated that Holcomb had suffered a serious spinal injury. *Id.*  It was determined that Holcomb was irreparably damaged. *Id.* at ¶ 28.  Dr. Grillo and Dr. Clark were immediately and summarily suspended. *Id.* at ¶ 29.  Dr. Grillo remained suspended for nearly two years. *Id.* at ¶ 31.  During this time, he engaged in adversarial proceedings with the CDC relating to the suspension of his employment. *Id.*  Dr. Grillo also filed a charge with the EEOC alleging race discrimination and wrongful suspension. *Id.*

In 2001, the California Medical Board ("CMB") initiated an administrative action against Dr. Grillo.

---

[2] Patients with Munchausen syndrome "go from medical provider to medical provider dramatically presenting very plausibe symptoms and histories and receiving care, up to and including surgery." *Id.* at ¶ 10, n. 1.  "They fake physical signs of illness and abnormal laboratory findings." *Id.*

*Id.* at ¶ 33. In the CMB proceedings, Dr. Grillo was accused of giving Holcomb a saline solution for no apparent reason while at the same time telling the patient that he was giving him a "powerful medication to make him stronger." *Id.* at ¶ 34,

On June 7, 2002, Dr. Grillo, on one hand, and the State and the CDC, on the other, entered into a settlement agreement. *Id.* at ¶ 32. Dr. Grillo acknowledged in the agreement that it was entered into freely and voluntarily by and with the advice of counsel. *Id.* Pursuant to the settlement agreement, Dr. Grillo agreed to release and dismiss all claims against the State and the CDC, including but not limited to claims under the Fair Employment and Housing Act, Title VII, and the Age Discrimination in Employment Act. Dr. Grillo also waived the benefits of California Civil Code § 1542, which provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." *Id.*

Although Dr. Grillo believed that the CMB's action against him would be terminated as a result of the June 7, 2002 settlement agreement, it was not. *Id.* at ¶ 33.

Dr. Grillo was subsequently required by the CMB to participate in the Physician Assessment and Clinical Education ("PACE") program. *Id.* at 36. The PACE program is a for-profit program run by defendant William Norcross, M.D. ("Dr. Norcross") and administered by a private, unaccredited group of physicians in San Diego who are predominately white. *Id.* at ¶¶ 36, 39. The primary purpose of the program is the evaluation of physicians with substance abuse problems or mental illness. *Id.* at ¶ 39. The PACE program takes place over two days, and is intended to evaluate the physician's skills. *Id.* at ¶ 37. Among the factors evaluated in the PACE program are: (1) an assessment of clinical knowledge; (2) a chart review; (3) ethics; (4) communication; (5) mechanisms of disease; (6) interpretation of medical literature; and (7) an exam specific to the participant's field. *Id.* The PACE program also requires a computer test and the performance of a complete history and physical examination of the physician, including neurocognitive and psychological screening. *Id.* The PACE program charges participants $5,000 for the two-day exam and another $4,500 for the second part of the exam. *Id.* at ¶ 39. No curriculum is provided to the participants and there are no text books, test materials, or manuals to assist them with preparation for the course. *Id.* at 38. The PACE

4

evaluation is, for the most part, subjective as there are no standards or metrics indicating the physician's proficiency in medicine. *Id.* At the end of the program, a participant is rated as "Pass," "Fail," or "More Training Needed." *Id.* at ¶ 39. At the time Dr. Grillo participated in the program, it had only been in existence for a few years and had been never been administered to a large sample of test-takers. *Id.* at ¶¶ 38-39.

Dr. Grillo participated in the program during two days in May 2004 and a week in September 2004. *Id.* at ¶ 44. He paid approximately $9,500 in fees. *Id.* Based on Dr. Grillo's performance in the PACE program, Dr. Norcross provided the CMB with a declaration indicating that "Dr. Grillo was slow and cautious, sacrificing speed for accuracy, although both scores were still within normal limits." *Id.* at ¶¶ 40, 41. Dr. Norcross further noted that Dr. Grillo's scores were "consistently low across the board," that "Dr. Grillo did display an area of strength in anatomic structures and relative strength in pathology and laboratory medicine," that "Dr. Grillo employed good judgment in implementing that knowledge," and that "[w]hile everyone agreed that Dr. Grillo's strength is his pleasant, caring manner, there was genuine concern expressed." *Id.* at ¶ 42. Dr. Norcross further observed that Dr. Grillo had indicated that he was not computer literate and that "[c]omputer literacy is a factor in this examination." *Id.*

On October 4, 2004, based on Dr. Norcross' declaration, the CMB suspended Dr. Grillo's license to practice medicine. *Id.* at ¶¶ 40, 46. On October 6, 2004, the CMB issued a press release stating the following:

> The Medical Board has filed an accusation against Grillo alleging unprofessional conduct through gross negligence and incompetence in that he failed to diagnose a cervical spine injury of a prisoner at Soledad prison who had suffered a subluxation of C4-C5, resulting in quadraplegia. The board later adopted a stipulated settlement and disciplinary order, which imposed a public letter of reprimand with a condition precedent: successful completion of Phases I and II of the Physician Assessment and Clinical Education (PACE) program at the University of California at San Diego.
>
> In a September 8, 2004 communication to the board from the Director and Associate Director of the UCSD Pace Program, the board was fully informed that serious deficiencies were noted during Grillo's assessment by the PACE faculty/staff. The assessment report noted that at a multi-disciplinary staff meeting on September 1, 2004, the director and other participants 'expressed grave reservations about whether Dr. Grillo should be practicing medicine' and that the 'deficiencies documented during his two-day Phase-1 PACE Assessment, if applied in the real world of medical practice, would almost certainly have resulted in patient harm, and perhaps even death.' The report also stated that Grillo's serious deficiencies of clinical knowledge and judgment extended beyond the limited scope of the PACE

5

>Program's five-day clinical education and that as a result, 'may require additional training or monitoring either in residency, fellowship, or some other proctored environment.'

*Id.* at ¶ 48.

**B.     Procedural History.**

On June 22, 2005, Plaintiff filed a Complaint against the State, the CDC, the CMB, and Dr. Norcross alleging the following causes of action: (1) "injunctive relief" to enforce the June 7, 2002 settlement agreement and for reinstatement of his job and license[3]; (2) violations of 42 U.S.C. §§ 1983, 1985, 1986, and 1988; (3) wrongful termination in violation of public policy; (4) "conspiracy to deprive civil rights"; (5) defamation; (6) infliction of emotional distress; (7) tortious interference with existing and prospective business; and (8) fraud.

On July 12, 2005, the State and the CDC filed a Motion to Dismiss. On August 15, 2005, the CMB filed a Motion to Dismiss.[4]

## LEGAL STANDARD

**A.     Federal Rule of Civil Procedure 12(b)(6).**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if it appears beyond a reasonable doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). For purposes of such a motion, the complaint is construed in the light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994). All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

The court does not accept as true unreasonable inferences or conclusory allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *See Miranda*

---

[3]Plaintiff's first cause of action does not actually state a cognizable claim, but merely seeks certain equitable relief that Plaintiff alleges he would be entitled to if he were to prevail on his other causes of action.

[4]The Court notes that Dr. Norcross has not yet been served with the Complaint and therefore has not appeared in this action or joined in either of the Motions to Dismiss.

United States District Court
For the Northern District of California

1  *v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell v. Golden State Warriors*, 266 F.3d 1187 (9th Cir. 2001); *McGlinchy v. Shell Chem Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.").

When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). Of these factors, prejudice to the opposing party is the most important. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)). Leave to amend is properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## ANALYSIS

**A.      Requests for Judicial Notice.**

As a preliminary matter, the Court notes that both the CMB and Plaintiff have asked the Court to consider materials outside of the pleadings in this matter. Specifically, Defendant CMB has requested that the Court take judicial notice of certain documents on the grounds that the documents are part of the public record of the underlying administrative proceeding involving Plaintiff and the CMB.[5] Plaintiff, on the other hand, merely attaches certain documents to his Opposition, but makes no clear request for judicial notice.[6] Plaintiff does, however, oppose the CMB's request for judicial notice on the grounds that the documents the CMB seeks to submit are: (1) beyond the scope of the Complaint; (2) subject to dispute; and (3) not relevant.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, Federal Rule of Evidence 201 provides an exception to this general rule. *See* Fed. R. Evid. 201. Under Rule 201, a court may take judicial notice of "matters of public record" as long as the facts are not "subject to reasonable dispute." *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citations omitted).

Court filings and orders are the type of documents that are properly noticed under Rule 201. Notice can be taken, however, "only for the limited purpose of recognizing the 'judicial act' that the order [or filing] represents on the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir.1994) (citing *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992)); *see also General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082, n. 6

---

[5]The particular documents that the CMB seeks judicial notice of are all part of the record in *In the Matter of Accusation Against Isaac A. Grillo, M.D.* before the Division of Medical Quality Medical Board of California and are as follows: (1) the Stipulation and Order re: Interim Order Suspending License Pursuant to Govt. Code Section 11529; (2) the Supplemental Accusation and Petition to Enforce Decision; and (3) the Stipulated Settlement and Disciplinary Order.

[6]Plaintiff attaches the following documents to his Opposition: (1) a July 1, 2005 article from the *Sacramento Bee*; (2) a June 24, 2005 article from the *Daily Journal*; and (3) the Notice of Hearing in *In the Matter of Supplemental Accusation and Petition to Enforce Decision Against Isaac A. Grillo, M.D.* before the Division of Medical Quality Medical Board of California.

United States District Court
For the Northern District of California

(7th Cir. 1997) ("We agree that courts generally cannot take notice of findings of fact from other proceedings for the truth [of the matter] asserted therein because these findings are disputable and usually are disputed."); *San Luis v. Badgley*, 136 F. Supp. 2d 1136, 1146 (E.D. Cal. 2000) (a court "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the litigation, but rather to establish the fact of such litigation and related filings.").

Applying this standard, the Court finds that it may take judicial notice of the documents the CMB has submitted, but only of the existence and legal effect of the documents. Because it appears that the CMB is requesting judicial notice of these documents for that limited purpose, and because it appears that the documents are in fact relevant to the instant action, the CMB's request for judicial notice is GRANTED.[7] For the same reasons, the Notice of Hearing in *In the Matter of Supplemental Accusation and Petition to Enforce Decision Against Isaac A. Grillo, M.D.* before the Division of Medical Quality Medical Board of California – which Plaintiff has submitted to the Court – is judicially noticed as well. With respect to the two articles that Plaintiff seeks to have the Court consider, however, the Court finds that these documents are irrelevant. Further, because it appears that Plaintiff is inappropriately requesting that the Court take judicial notice of the documents for the truth of certain facts asserted therein, judicial notice is not proper. Accordingly, these documents have not been considered by the Court and the Court hereby strikes these documents from the record.

## B. Motions to Dismiss.

### 1. Plaintiff's Federal Claims and the Eleventh Amendment.

In its Motion to Dismiss, the CMB argues that Plaintiff's federal claims, asserted in his second cause of action[8] pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988 (the "Civil Rights Act"), must be dismissed

---

[7] In light of the authorities set forth above, Plaintiff's argument that the documents from the administrative proceedings are of questionable authenticity and subject to dispute is without merit. Further, Plaintiff's argument is completely undermined by the fact that Plaintiff also seeks to have the Court consider a document that is part of the same administrative record. Additionally, since this Court make take judicial notice of certain documents pursuant to Rule 201 without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment, Plaintiff's request for a Rule 56(f) continuance is inappropriate and is therefore denied.

[8] Although Plaintiff does not clearly identify the statutory basis for his fourth cause of action, it also appears to be brought under 42 U.S.C. § 1983.

9

because the CMB is not a "person" subject to liability under the Civil Rights Act and the Eleventh Amendment[9] bars Plaintiff from pursuing a federal claim under the Civil Rights Act against the CMB or other state defendants. The State of California and the CDC also move to dismiss Plaintiff's federal claims on the grounds that Plaintiff's second and fourth causes of action do not set forth any basis for liability against either the State or the CDC.

42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

Section 1985 establishes liability for any person who, with at least one other person, "conspire[s] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws." 42 U.S.C. § 1985. Further, under section 1986:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented.

42 U.S.C. § 1986. Section 1988 provides for the recovery of attorney's fees. *See* 42 U.S.C. § 1988.

---

[9] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The United States Supreme Court has consistently held that the Eleventh Amendment also prohibits suits against a State, or its agencies and departments, by its own citizens without the State's consent. *Welch v. Texas Dept. of Highways & Public Trans.*, 483 U.S. 468, 472 and 478-495 (1987).

United States District Court
For the Northern District of California

Here, the sole basis for the purported § 1983 claim alleged in Plaintiff's second cause of action is Plaintiff's contention that the CMB deprived him of his right to due process by failing to grant him the right to a hearing or the right to cross-examine witnesses prior to suspending his license. Compl. at ¶ 59. While Plaintiff alleges that the CDC also participated in this alleged violation of Plaintiff's substantive due process rights, the underlying factual allegations make clear that the hearing Plaintiff is referring to was conducted by the *CMB*, a separate entity and defendant, and not the *CDC*. With respect to the § 1985 claim, Plaintiff also alleges that each of the defendants "conspired to violate [his] rights, privileges, and immunities guaranteed . . . by the Constitution." *Id.* at ¶ 60. However, Plaintiff does not provide any facts in support of this alleged conspiracy claim. With respect to Plaintiff's fourth cause of action for "conspiracy to deprive civil rights," Plaintiff vaguely alleges that "[u]nknown employees of the CDC have conspired with each other and with others to deprive Dr. Grillo of his right to due process, including a right to notice, a meaningful opportunity for a hearing, confrontation and cross-examination." *Id.* at ¶ 69. Plaintiff further alleges that "[b]ecause the [PACE] test was subjective, and because Dr. Norcross had a serious conflict of interest, and because there are no standards for the PACE program, the actions of the department of corrections also violate Dr. Grillo's substantive due process rights." *Id.* The fourth cause of action does not appear to allege any claims against the CMB.

Having reviewed the Complaint, the Court agrees with the State and the CDC that the second and fourth causes of action, as currently plead, do not appear to clearly state a claim under 42 U.S.C. §§ 1983, 1985, or 1986 against the State or the CDC. The allegations are entirely vague and conclusory and, although Plaintiff repeatedly refers to an alleged deprivation of his right to a "hearing, confrontation and cross-examination," those allegations quite clearly concern the administrative proceeding before the CMB, *not* the CDC. More importantly, however, as the CMB correctly argues, it is well-established that states, state agencies, and state officials acting within their official capacity are not "persons" within the meaning of the federal Civil Rights Act and may not be subjected to suit under the statute. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Bennet v. California*, 406 F.2d 36, 39 (9th Cir. 1969). Indeed, in *Will*, the United States Supreme Court stated that: "Section 1983 provides a federal forum to remedy many deprivations

of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity, . . . or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will*, 491 U.S. at 66. The Supreme Court then expressly held that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance." *Id.* Suits against a state or state agency brought under 42 U.S.C. § 1985 are also barred by the Eleventh Amendment. *See Fincher v. State of Fla. Dept. of Labor and Employment Sec.,* 798 F.2d 1371, 1371 (11th Cir. 1986).

Here, it is clear that the CMB is a state agency within the California Department of Consumer Affairs that is responsible for the quality of medical practice of physicians within the State of California and has licensing, regulatory, and disciplinary authority to carry out its actions. The CDC is also clearly an agency of the state. *See* Cal. Bus. & Prof. Code §§ 2001, *et seq.*; Cal. Gov. Code § 900.6 ("State" includes any department, divisions, bureau, board, commission, or agency of the State."). Plaintiff's argument to the contrary is directly undermined by the relevant Ninth Circuit authorities. *See Forster v. County of Santa Barbara,* 896 F.2d 1146, 1149 (9th Cir. 1990) ("The California Board of Medical Quality Assurance is an agency of the state of California."); *Bennett,* 406 F.2d at 39 ("state agencies such as the . . . California Department of Corrections, which are but arms of the state government, are not 'persons' within the meaning of the Civil Rights Act."). Accordingly, the CMB, the CDC, and the State are all entitled to Eleventh Amendment immunity. Further, since none of these defendants can be held liable on the merits of Plaintiff's Civil Rights Act claim, attorney's fees under section 1988 are unavailable. *Stevens v. Gay*, 864 F.2d 113, 115 (11th Cir. 1989). The fact that Plaintiff believes that the Eleventh Amendment does not bar other statutory causes of action that are

***not*** actually plead or asserted in his Complaint – such as 42 U.S.C. § 3789d(c)[10], 42 U.S.C. § 2000d[11], 42 U.S.C. § 1997[12] – is entirely irrelevant and does not alter this conclusion.  Plaintiff's federal causes of action against the State, the CMB, and the CDC, as currently plead, *are* undisputedly barred by sovereign immunity and Plaintiff's claims under 42 U.S.C. §§ 1983, 1985, 1986, and 1988 are therefore DISMISSED WITH PREJUDICE.[13]   Moreover, while Plaintiff has specifically sought leave to amend his Complaint, the allegations he seeks to assert appear to be limited to claims that may only be brought against an employer. Accordingly, since Plaintiff has not identified any cognizable federal claims against the CMB that are not barred by the Eleventh Amendment, the CMB is DISMISSED from this lawsuit WITH PREJUDICE.

---

[10] 42 U.S.C. § 3789d(c) provides that "No person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this chapter."

[11] 42 U.S.C. § 2000d provides that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

[12] 42 U.S.C. § 1997 is the Prison Litigation Reform Act and, as Plaintiff is not a prisoner, it is not clear how this statute is even applicable.

[13] The CMB also argues that Plaintiff's federal claims must be dismissed because Plaintiff knowingly waived his right to a hearing and therefore cannot state a due process claim against the CMB. *See* CMB Reply at Ex. B at pp. 0011-0013.  In support of this argument, the CMB offers documents from the public record in the administrative proceeding underlying the instant action demonstrating that the CMB properly followed the procedures set forth in California Government Code § 11529 governing the suspension of a medical license. *See* Cal. Gov. Code § 11529 (setting forth procedures that must be met in order for the administrative law judge to issue an interim order suspending license and providing for subsequent notice and hearing); *see also* Cal. Gov. Code § 11505 (providing for hearing); *see also* CMB Reply at Ex B at pp. 0018-0024.  While Plaintiff's counsel argues in Plaintiff's Opposition brief that the written waiver of the hearing must be disregarded because Plaintiff's counsel "question[s] . . . under what circumstances [Plaintiff signed the document] and with what promises he was induced to sign any document," Plaintiff's Complaint does not set forth any facts in support of this newly created argument that Plaintiff did not knowingly waive his right to a hearing before the CMB or that he was somehow fraudulently induced into relinquishing his rights.  To the extent that Plaintiff's Complaint discusses fraud, it concerns an entirely different settlement agreement with the CDC. Notwithstanding this point, the Court need not resolve this dispute since the fact remains that Plaintiff's Civil Rights Act claims against the State, the CDC, and the CMB are barred by the Eleventh Amendment.

**2. Plaintiff's State Law Causes of Action.**

With regard to Plaintiff's remaining state law causes of action, Defendants argue that Plaintiff's claims must be dismissed because Plaintiff has not complied – and cannot comply – with the California Tort Claims Act. Defendants also note that several of the state law causes of action fail on the merits. In his Complaint, Plaintiff alleges the following state law causes of action: (a) wrongful termination, (b) defamation, (c) infliction of emotional distress, (d) tortious interference with existing and prospective business, and (e) fraud.[14]

**a. California Tort Claims Act.**

Under California Government Code § 911.2, "[a] claim relating to a cause of action for death or for injury to person or to personal property . . . shall be presented [to the public entity]. . . not later than six months after the accrual of the cause of action." *Id.* Additionally, California Government Code § 945.4 provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board[ .]" Cal. Gov. Code § 945.4. Finally, section 945.6 provides that, "any suit brought against a public entity on a cause of action for which a claim is required to be presented . . . must be commenced, if written notice is given in accordance with section 913, not later than six months after the date such notice is personally delivered or deposited in the mail." Cal. Gov. Code § 945.6. "[T]he combined effect of sections 911.2 and 945.6 is that a claim for a personal

---

[14]Although the third cause of action for wrongful termination is asserted against "all defendants," the Complaint makes clear that CMB was not Plaintiff's employer, and there are no facts in the Complaint sufficient to establish liability against the CMB under this legal theory. Accordingly, on this basis alone, with respect to the CMB, the wrongful termination claim is DISMISSED WITH PREJUDICE. Similarly, the Complaint states that the eighth cause of action for fraud is asserted against "all defendants," but the underlying allegations quite plainly only concern the State and the CDC. Further, Plaintiff has not identified any relevant facts that would indicate that he could amend his complaint to state a claim against the CMB for fraud. Accordingly, this claim against the CMB is DISMISSED WITH PREJUDICE. Finally, Plaintiff's defamation claim, asserted in his fifth cause of action, and the tortious interference claim, asserted in his seventh cause of action, appear to be asserted only against the CMB. Indeed, Plaintiff confirms this fact in his Opposition by arguing that "Plaintiff's defamation case did not accrue when the defamatory statements were posted to the CMB website. They accrued when Plaintiff learned of it barely days prior to the filing of the complaint." *See* Opp. at 7. Plaintiff also argues that his interference claim has to do with the "rejection of the Plaintiff's employment in Kansas in May/June 2005," which, according to the allegations in the Complaint, is connected to the CMB's actions against Plaintiff. Given the position Plaintiff has taken in his Opposition, the Court concludes that he has failed to state a claim against the CDC or the State for either the defamation claim or the tortious interference claim.

injury action against a public entity must be presented within six months of the injury; and if the claim is denied, suit must be filed within six months of the date of denial." *Schmidt v. Southern California Rapid Transit Dist.*, 14 Cal. App. 4th 23, 25-26 (1993).

A valid tort claim must state the date, place, and other circumstances of the occurrence or transaction which gave rise to the claim, a general description of the injury or damage incurred, and the name or names of the public employees who caused such injury or damage. Cal. Gov. Code § 910(c)-(e). Pursuant to California Government Code § 915(b), claims against the State must be presented to the State Victim Compensation and Government Claims Board. Cal. Gov. Code § 915.

Section 950.2 of the California Government Code provides in pertinent part, "a cause of action against a public employee or former public employee from an act or omission in the scope of his employment as a public employee is barred if an action against the employing public entity for such injury is barred[.]" Cal. Gov. Code § 950.2. "Proper filing of a claim against the public entity is a condition precedent to action against the employees." *Moyer v. Hook*, 10 Cal. App. 3d 491, 492 (1970). If a civil complaint does not affirmatively allege compliance with the claim presentation requirements, or allege facts showing the applicability of a recognized exception or excuse for noncompliance, it must be dismissed. *State v. Superior Court*, 32 Cal.4th 1234, 1242 (2003); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 627 (9th Cir. 1988). In fact, the Ninth Circuit has expressly held that compliance with California's Tort Claims Act is a substantive element of any cause of action against the State. *See U.S. v. California*, 655 F.2d 914, 918 (9th Cir. 1980).

Here, it is beyond dispute that Plaintiff has not complied with the above-noted requirements. Indeed, the Complaint does not contain any factual allegations sufficient to show that Plaintiff submitted a written claim to the State Victim Compensation and Government Claims Board. For this reason alone, the state law claims in the Complaint are DISMISSED. *State v. Superior Court*, 32 Cal.4th at 1242. Further, Plaintiff's argument that he is excused from compliance with the California Tort Claims Act merely because his claim "arose under the watchful eyes of the State" is completely without merit. As the CDC notes in its Reply brief, California courts have long held that actual knowledge by the public entity of the facts and circumstances regarding a potential claim does not excuse the plaintiff's failure to comply with the California Tort Claims Act. *See City*

*of San Jose v. Superior Court*, 12 Cal.3d 447, 455 (1974); *Department of Water & Power v. Superior Court*, 82 Cal.App.4th 1288, 1296-97 (2000). As stated by the California Supreme Court in *City of San Jose*:

> It is not the purpose of the claims statutes to prevent surprise. Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. . . . It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge - standing alone - constitutes neither substantial compliance nor basis for estoppel.

*City of San Jose*, 12 Cal.3d at 455. Additionally, Plaintiff cannot rely on the substantial compliance doctrine because the doctrine "has application only when there is a defect in form but the statutory requirements have been met." *Nguyen v. Los Angeles County Harbor/UCLA Medical Center*, 8 Cal.App.4th 729, 732-33 (1992).

Effectively conceding that he has not met the requirements of the California Tort Claims Act, Plaintiff includes in his Opposition a "motion for leave to file a late claim with the Government." The State and the CDC, however, argue that Plaintiff cannot possibly amend his Complaint to demonstrate compliance with the California Tort Claims Act because "it is clear that plaintiff is not entitled to any late-claim relief." *See* CDC Reply at 4. Pursuant to California Government Code § 911.4(b), an application for a late-claim must be "presented to the public entity . . . within a reasonable time *not to exceed one year* after the accrual of the cause of action." Cal. Gov. Code § 911.4(b). Here, Plaintiff does not appear to dispute that he is not entitled to late-claim relief on his wrongful termination claim, his infliction of emotional distress claim, or his fraud claim,[15] but argues instead that he has not missed the *initial* deadline for his defamation claim and his tortious

---

[15]Plaintiff does vaguely assert that the State and the CDC should be "estopped" from relying on the California Tort Claims Act presumably due to the fact that the CDC entered into a settlement agreement with Plaintiff on June 7, 2002 whereby Plaintiff agreed to release any and all claims against the CDC. However, Plaintiff's argument depends entirely upon his misguided belief that the CDC is somehow responsible for the CMB's actions. As set forth below, this argument is foreclosed by *Hogen v. Valley Hospital*, 147 Cal.App.3d 119, 125 (holding that the California Medical Board is a separate entity that is empowered and directed to conduct an independent investigation of all complaints from the public prior to the filing of an accusation pursuant to California Business and Professions Code § 2220 and California Government Code §§ 11500-11528). Significantly, Plaintiff's Complaint does not allege – because it cannot – that the CDC "promised," as part of the agreement, that the *CMB* would cease its investigation and proceedings against Plaintiff. More importantly, however, Plaintiff's argument still does not explain why he failed to comply with the California Tort

interference claim because these claims are "connected with the [CMB's October 4, 2004] publication and the rejection of the Plaintiff's employment in Kansas in May/June 2005." Even if Plaintiff were correct on this point however, which this Court does not so find, his argument does not prevent dismissal of his state law claims against the CDC because – even assuming that Plaintiff has alleged facts sufficient to state a claim for these causes of action – the facts alleged in the Complaint only pertain to the CMB, not the CDC or the State. Since Plaintiff cannot state a federal claim against the CMB, the question of whether he can pursue state law claims against the CMB is irrelevant. Accordingly, all of Plaintiff's state law claims are hereby dismissed for failure to comply with the California Tort Claims Act. Since the facts alleged in the Complaint demonstrate that Plaintiff is not entitled to late-claim relief, particularly given the fact that his claims against the CDC first accrued roughly *three* to *four* years ago – Plaintiff's state law claims are DISMISSED WITH PREJUDICE.

### b. Plaintiff's Claims for Fraud and Defamation.

The State and the CDC alternatively argue that Plaintiff's fraud claim is barred by California Government Code § 818.8, which provides that "[a] public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional." Cal. Gov. Code § 818.8. Plaintiff utterly fails to provide any opposition to this argument. The Court has already concluded that Plaintiff's state law claims should be dismissed due to Plaintiff's failure to comply with the California Tort Claim's Act. However, the Court finds it important to note that California Government Code § 818.8 does in fact preclude Plaintiff from asserting a fraud claim against the State or the CDC based on either negligent or intentional misrepresentations of its employees.

Similarly, to the extent that Plaintiff is attempting to argue that the CDC is liable for defamation for allegedly reporting him to the CMB, such claims are barred by California Civil Code § 47, commonly referred to as the "litigation privilege." Indeed, the California Court of Appeals expressly acknowledged in *Hogen* that communications to the CMB relating to an administrative proceeding are absolutely privileged. *See Hogen*, 147 Cal.App.3d 119, 122-23. A claim against the CDC for malicious prosecution is also foreclosed by

---

Claims Act. Even if the CDC were legally responsible for the CMB's actions, which it is not, then Plaintiff had notice of the "breach" of the settlement agreement as early as June 2002, when the settlement agreement became effective and the CMB administrative proceedings were not terminated.

*Hogen*, particularly in this instance, where Plaintiff's Complaint clearly states that the CMB initiated its action against Plaintiff solely based on its own investigation and, specifically, based on a declaration provided by *Dr. Norcross*, who is not employed by, in control of, or otherwise affiliated with the CDC. *Hogen*, 147 Cal.App.3d at 125. Accordingly, these claims against the State and the CDC fail on their merits.

Given Plaintiff's failure to provide any meaningful opposition to these arguments, and given the persuasiveness of the State and the CDC's arguments, the Court DISMISSES WITH PREJUDICE the fraud and defamation claims on these additional grounds as well.

### C. Plaintiff's Request for Leave to Amend.

While Plaintiff has specifically requested leave to amend his Complaint, with respect to the CMB, Plaintiff has not identified any facts that: (1) would be consistent with the current Complaint and (2) would cure the deficiencies identified in this memorandum. *Schreiber Distrib. Co.*, 806 F.2d at 1401. Accordingly, the Court concludes that further leave to amend would be futile, and hereby DISMISSES the claims against the CMB WITH PREJUDICE. With respect to the claims against the State and the CDC, the Court notes that it has serious concerns regarding Plaintiff's ability to state a claim against these entities in light of the fact that Plaintiff admits in his current Complaint that he signed a settlement agreement in June 2002 in which he knowingly and voluntarily released all known and unknown claims against the State and the CDC. Although Plaintiff has suggested to the Court that the settlement agreement may not have been a valid and enforceable agreement, the Court is not able to make this determination on the instant Motions to Dismiss. Accordingly, Plaintiff is granted leave to amend, but is expressly warned that <u>leave to amend is conditioned on his ability to plead facts consistent with the current Complaint that are sufficient to show that he has not knowingly and voluntarily waived his right to assert claims against the State and the CDC</u>.

## CONCLUSION

IT IS HEREBY ORDERED THAT Defendant California Medical Board's Motion to Dismiss [Docket No. 11] is GRANTED. All of Plaintiff's claims against the California Medical Board are hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED THAT Defendants State of California and California Department of

Corrections' Motion to Dismiss [Docket No. 4] is GRANTED. Plaintiff's federal causes of action under 42 U.S.C. §§ 1983, 1985, 1986, 1988 are DISMISSED WITH PREJUDICE. Plaintiff's state law claims are also DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED THAT Plaintiff is granted leave to file an amended complaint that addresses the deficiencies identified in the Court's Order <u>no later than thirty (30) days of the date of this Order</u>. However, Plaintiff may file an amended complaint against the State of California and the California Department of Corrections *<u>only if</u>* Plaintiff can allege, in *good faith,* facts sufficient to show that: (1) he has a cognizable federal cause of action against the State and the California Department of Corrections that is not barred by the Eleventh Amendment; and (2) he has not knowingly and voluntarily waived his right to assert the claims against the State and the California Department of Corrections. The Court reminds Plaintiff that, if he wishes to file an amended complaint that asserts state law causes of action against the State or the California Department of Corrections that have not been dismissed with prejudice by the Court, he must set forth specific factual allegations sufficient to show either that: (1) he complied with the claim presentation requirements of the California Tort Claims Act, or (2) he did not comply with the claim presentation requirements of the California Tort Claims Act, but can demonstrate the existence of an *applicable* and *recognized* exception or excuse for noncompliance. Plaintiff is also be reminded that, if he chooses to file an amended complaint, the amended complaint will supercede the instant Complaint.[16] Therefore, the amended complaint must be self-contained and cannot refer to, or incorporate by reference, any part of his prior complaint. <u>Failure to amend the Complaint in compliance with this Order shall be construed by the Court as evidence that further leave to amend would be futile.</u>

IT IS SO ORDERED.

*Saundra B Armstrong*

Dated: 9-21-05

SAUNDRA BROWN ARMSTRONG
United States District Judge

---

[16] All parties are also reminded that, since Dr. Norcross has not yet been served with the Complaint, the current Complaint is still operable with respect to Dr. Norcross unless and until Plaintiff elects to file an amended complaint.